IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06mj116

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| CHARLES ALEXANDER MILLS ) | |
| ) | |

**THIS MATTER** is before the Court upon the government's Notice of Appeal[1] (Doc. No. 12) of the magistrate judge's release order (Doc. No. 11). For the reasons stated below, the Court will REVOKE the release order and detain the defendant pending trial.

The defendant was arrested on June 4, 2006 for traveling in interstate commerce (from Dallas, Texas to Charlotte, North Carolina) for the purpose of engaging in illicit sexual conduct with a minor, in violation of Title 18, United States Code, Section 2423(b). The magistrate judge ordered the defendant's release on conditions after a hearing on June 14, 2006. (Doc. No. 11).

At the hearing and within the complaint, the government proffered the following facts. On May 24, 2006, a law enforcement officer ("UCO"), while conducting an undercover operation targeting child predators in a Yahoo chat room entitled "Fetishes: 14," encountered an individual identifying himself as "GUNTRAIN22," later identified as defendant Mills through checks in public databases using the information provided by Mills to UCO. UCO's online persona was that of a single mother with a ten year old daughter.

---

[1] Although styled a "Notice of Appeal," the government's action is more accurately described as a "Motion for Revocation of Release Order." See 18 U.S.C. § 3145(a).

1

Mills stated to UCO that he was a sixty-five year old retired airline pilot, that his name was Charlie, and that he lived near Fort Worth, Texas, and later revealed the town as Grandbury. He also stated that due to his thirty-two years of service for Delta Airlines as a pilot, he was able to fly no-charge on stand-by with Delta.

Through the course of their on-line chats, Mills stated his interest in having oral sex and / or sexual intercourse with UCO's ten year old daughter and with UCO. Mills also implied that he required the help of an enhancement, such as Viagra, for a long lasting performance. They discussed plans for him to travel to Charlotte in order to have the sexual encounters. He provided UCO with his cell phone number.

During the instant messaging, Mills allowed the UCO to view him real-time through a webcam. Mills sent at least eight e-mail messages from his account to UCO, in which he discussed his efforts to find an open flight. In one e-mail, Mills requested a picture of the ten year old daughter. He also inquired as to whether UCO was involved with law enforcement because he felt the need to be very careful.

UCO suggested that Mills present a small gift to the minor in order to gain her appreciation before the sexual encounter. The suggestions included a teddy bear, lip gloss or other small items that would be appropriate for a young girl. Subsequently, Mills stated that he had gotten a few things for the girl.

In the last e-mail message, Mills stated that he would be arriving in Charlotte around 12:00p.m. on June 4th, 2006, and would check into a hotel, after which he would contact UCO to meet him at the hotel.

Upon arriving at the hotel, Mills was observed by surveillance at 12:37p.m. using his cell

phone to leave a message on UCO's voicemail, stating his arrival and that he was waiting for their visit. At 12:45p.m., Mills was taken into custody by Special Agents of the FBI and SBI in the hotel lobby.

Upon interview by Special Agent Alexis Carpinteri, Mills confessed to the following: his intent to have sex with both the mother and ten year old daughter; that the purpose of the travel was to have sex with both the mother and daughter; bringing of condoms, lubricants, Viagra, an injectable enhancement drug, and presents for the daughter (which included lip gloss and nail polish for little girls, a "Hello Kitty" doll, "Hello Kitty" clothing, and a "Hello Kitty" camera); having fantasies of sex with ten year old girls; having child pornography on his computer in Texas (which was subsequently seized by Texas law enforcement and is presently being investigated for possible Federal charges); receiving and distributing child pornography over the Internet; and, finally, speaking with others about having sex with their children as well.

At the detention hearing, Defendant recognized that the nature and circumstances of the crime were not in his favor for release. He proffered, however, that his history and personal characteristics weighed heavily in his favor. Defendant asserted a genuine family bond, with two successful and devoted sons. His thirty-two years with Delta and present employment with a private jet company demonstrated a continual record of professional employment and personal stability.

Mills further argued that he poses no danger to the community if released. He proffered two different studies positing that this type of criminal activity has a substantially lower risk of recidivism than other crimes and that psychotherapy can cause the recidivism rate to drop seven to ten percent. Lastly, defendant's attorney in his pending DWI charge described Mills as a

respected member of the community, with ties to church and other dignified activities.

After hearing this information, the magistrate judge released the defendant on a $100,000 unsecured bond, with electronic monitoring, under a home detention that permits Mills to leave his home for numerous "wholesome" activities. The court required the defendant to surrender his pilot's license to the United States Probation Office and required his counsel to report the details of the defendant's arrest to the FAA. Counsel did this immediately after the hearing. The court further required the defendant to undergo psycho/sexual counseling and to refrain from accessing any computer. The government gave notice of its intention to appeal and the magistrate judge stayed his release order.

A district court is required to make an independent, de novo determination when acting on a motion to revoke or amend a magistrate judge's pretrial release order. United States v. Stewart, 19 Fed. Appx. 46, 48 (4th Cir. 2001) (citing United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992)). However, a district court is not required to hold an additional evidentiary hearing as part of its review. United States v. King, 849 F.2d 485, 489-90 (11th Cir. 1988); United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989).

The Court has conducted a de novo review of the evidence presented before the magistrate judge and the entire record in this case and conducted a de novo hearing on June 19, 2006. The Court will revoke the release order entered by the magistrate judge. The proof offered by the defendant fell well below that required to rebut the presumption of detention applicable to the charges in this case. 18 U.S.C. § 3142(e).

Title 18, Section 3142(e) of the United States Code provides that the Court shall order detention of the person if "no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community . . . ." When the defendant is charged with 18 U.S.C. § 2423, it shall be presumed that no condition or combination thereof will reasonably assure the safety of persons and the community. 18 U.S.C. § 3142(e).

The Court finds that Mills is a flight risk and poses a danger to the community. He is a flight risk because of his substantial wealth (over one million dollars in IRA's and stocks) coupled with his piloting skill. Although he has been ordered not to fly, there is no guarantee that the FAA will revoke the defendant's pilot's license. Even if his license is revoked, the Defendant has a skill set (flying), connections in the industry, and the demonstrated ability to travel freely. Furthermore, as discussed at the detention hearing, the sixty-five year old defendant knows the possibility of being confined for the majority of his remaining years. Thus, he has both the motive and the means to flee.

In determining that the defendant poses a flight risk or a serious danger to the community, the Court has taken into account, "(1) [t]he nature and circumstances of the offense charged, . . . (2) the weight of evidence against the person . . . (3) the history and characteristics of the person . . . [and] (4) the nature and seriousness of the danger to any persons or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); See also United States v. Minnici, 128, Fed. Appx. 827, 829-30, 2005 WL 953855 (2d Cir. 2005) (affirming detention of defendant on similar facts).

Here, the nature and circumstances of the offense charged reflect a recent history of alleged activity of an addictive sexual nature that cannot be suppressed simply by a restrictive set of bond conditions. The evidence reviewed includes the defendant's intentions to have sex with a

5

ten year old child; his desires and discussions with others about having sex with their young children; his purchase of gifts and travel halfway across the country to have sex with a ten year old child; and admission of possessing and distributing child pornography. 18 U.S.C. § 3142(g)(1). The weight of evidence against Mills is strong, including his confession to law enforcement. 18 U.S.C. § 3142(g)(2).

The history and characteristics of the person factor cuts both ways. The defendant has proffered strong family ties, a life-long work history and an honorable discharge from military service. On the other hand, the defendant allegedly committed the instant offense while on court-ordered release on state charges. The Court finds it unlikely that its order would have more success than the previous one in causing the defendant to abide by conditions of release. Additionally, the defendant's proffer of an otherwise law-abiding and respectable lifestyle is contradicted by the defendant's confession to law enforcement of committing other dangerous crimes, such as possessing and distributing child pornography, and discussing arrangements to have sex with others' children (who presumably were no fictitious creations of law enforcement). 18 U.S.C. § 3142(g)(3).

Thus, there would be a significant danger posed to the community if the defendant was released. Given the wide accessibility of the Internet, the defendant's admitted possession and distribution of child pornography, and his failure to abide by conditions of release in his pending state charge, the Court finds that Mills could readily continue his involvement in child pornography. Coupled with the defendant's ease of air and other travel, the safety of the community, and especially its most vulnerable children cannot be reasonably assured. 18 U.S.C. § 3142(g)(4).

The information alleged in the complaint and detention hearing provides ample basis for concluding that the defendant is a flight risk and poses a serious danger to the community. Thus, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the defendant were released. Even if the defendant were not a flight risk, the Court would detain the defendant based on clear and convincing evidence of his danger to the community.

**IT IS, THEREFORE, ORDERED** that the magistrate judge's release order (Doc. No. 11) is **REVOKED** and the defendant is committed to the custody of the Attorney General.

**IT IS FURTHER ORDERED** that, to the extent practicable, the defendant shall be confined in a corrections facility separate from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States marshal for the purpose of an appearance with a court proceeding.

The Clerk is directed to certify copies of this order to the defendant, counsel for the defendant, to the United States Attorney, the United States Marshals Service, and the United States Probation office.

Signed: June 20, 2006

Robert J. Conrad, Jr.
Chief United States District Judge